## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JESSICA SHANKS,          :
                                 :

      **Plaintiff,**         :

                                 :     **CIVIL ACTION FILE NO.**

**v.**                        :     **1:17-cv-00483-AJB**

                                 :

**COMMISSIONER, SOCIAL**   :
**SECURITY ADMINISTRATION,** :

                                 :

      **Defendant.**[1]       :

## <u>O R D E R   A N D   O P I N I O N</u>[2]

Plaintiff Jessica Shanks ("Plaintiff") brought this action pursuant to

section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to obtain judicial

review of the final decision of the Commissioner of the Social Security Administration

("the Commissioner") denying her application for Supplemental Security Income

---

[1]    Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.* Pursuant to Fed. R. Civ. P. 17(d), a public officer who sues or is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill no longer is the Acting Commissioner, the Clerk is **DIRECTED** to identify Defendant by the official title rather than by name.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (*See* Dkt. Entries dated 3/10/17). Therefore, this Order constitutes a final Order of the Court.

Benefits ("SSI") under the Social Security Act.[3]   For the reasons below, the undersigned **AFFIRMS** the final decision of the Commissioner.

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for SSI on July 20, 2012, alleging disability commencing on September 30, 2011.  [Record (hereinafter "R") 213].  Plaintiff's applications were denied initially and on reconsideration.  [*See* R101-08].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R109-11].  An evidentiary hearing was held on July 22, 2014.  [R31-67].  The ALJ issued a decision on September 19, 2014, denying Plaintiff's application on the ground that she had not

---

[3]   Title II of the Social Security Act provides for federal Disability Insurance Benefits ("DIB").  42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for Supplemental Security Income Benefits for the disabled.  Unlike Title II claims, Title XVI claims are not tied to the attainment of a particular period of insurance eligibility.  *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).   Otherwise, the relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.   *Wind v. Barnhart*, 133 Fed. Appx. 684, 690 n.4 (11th Cir. June 2, 2005) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 n.4 (11th Cir. 1986)).  Thus, in general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, although different statutes and regulations apply to each type of claim.  *See* 42 U.S.C. § 1383(c)(3) (establishing that the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI).  Therefore, to the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims.

AO 72A
(Rev.8/8
2)

been under a "disability" from the application date through the date of the decision. [R17-28]. Plaintiff sought review by the Appeals Council ("AC"), and the AC accepted Plaintiff's request for review and denied Plaintiff's application for benefits on July 28, 2016, making the AC's decision the final decision of the Commissioner.[4]  [R4-12].

Plaintiff then initiated her action in this Court on January 23, 2017, seeking review of the Commissioner's decision. [Doc. 1]. The answer and transcript were filed on May 31, 2017. [*See* Docs. 6, 7]. On August 3, 2017, Plaintiff filed a brief in support of her petition for review of the Commissioner's decision, [Doc. 11], and on September 1, 2017, the Commissioner filed a response in support of the decision, [Doc. 12].[5] The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 1383(c)(3).

---

[4]    The AC adopted significant portions of the ALJ's decision. For simplicity's sake, where the Court refers to the AC's decision and portions of the ALJ decision adopted by the AC, the Court will refer to the decision maker as "the Commissioner."

[5]    Plaintiff did not file a reply brief, and neither party requested oral argument. (*See* Dkt.).

AO 72A (Rev.8/8 2)

## II.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 416.912(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*,

AO 72A
(Rev.8/8
2)

190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. *See* 20 C.F.R. § 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(v). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. *Doughty*, 245 F.3d at 1278 n.2. To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Id.*

5

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. § 416.920(a)(4). Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## III. SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner. Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the

AO 72A
(Rev.8/8
2)

Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal

AO 72A
(Rev.8/8
2)

principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11ᵗʰ Cir. 1995); *Walker*,

826 F.2d at 999.

## IV.   ADMINISTRATIVE DECISION

The Commissioner made the following findings of fact and conclusions of law:

1.   The claimant has not engaged in substantial gainful activity since July 20, 2012, the application date (20 CFR 416.971 *et seq.*).

2.   The claimant has the following severe impairments: borderline intellectual functioning, cerebral palsy, seizures, post-traumatic stress disorder [("PTSD")], schizoaffective disorder, dysthymic disorder,[6] and sciatica (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

. . .

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity [("RFC")] to perform less than a full range of light work as defined in 20 CFR 416.967(b).  She is able to lift/carry up to 20 pounds on an occasional basis, and 10 pounds frequently.  She can stand/walk

---

    6   Dysthymia is a mild form of chronic depression that lingers for long periods of time, sometimes years.  Those who suffer from dysthymia are usually able to function adequately, but seem consistently unhappy. WebMD, Dysthymia (Mild, Chronic Depression), http://www.webmd.com/depression/guide/chronic-depression-dysthymia (last visited 3/13/18).

AO 72A
(Rev.8/8
2)

up to four hours in an 8-hour workday, and she can sit for up to six hours in an 8-hour workday. The claimant can push/pull up to 20 pounds. The claimant is unable to climb ladders, ropes or scaffolds; however, she is able to climb ramps and stairs on an occasional basis. She is able to perform balancing, stooping, kneeling, crouching, and crawling activities on a frequent basis. The claimant must avoid concentrated exposure to fumes, odors, dust, and gases, and she must avoid working near moving machinery, heights, and any workplace hazard. The claimant is able to perform simple, routine, repetitive type tasks. She is limited to work with only occasional changes in the work setting, and only occasional interaction with the public and co-workers. The claimant is unable to work in a fast-paced, high production work environment.

. . .

5.     The claimant has no past relevant work experience (20 CFR 416.965).

6.     The claimant was born on February 11, 1992 and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work experience (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

AO 72A
(Rev.8/8
2)

. . .

10.     The claimant has not been under a disability, as defined in the Social Security Act, since July 20, 2012, the date the application was filed (20 CFR 416.920(g)).

[R7-10, 19-23].[7] The Commissioner based the adverse disability finding on vocational-expert testimony that a person of Plaintiff's age, education, and work history, with the above RFC, could work as a silver wrapper, garment sorter, or paper pattern folder. [R23].

## V.    CLAIM OF ERROR

Plaintiff raises a single claim of error: that the ALJ and AC ignored or misconstrued the opinion of consultative psychological examiner Steven Snook, Ph.D., that Plaintiff would likely have trouble adapting to the stress of a work environment and thus that the Commissioner reversibly erred in finding that Plaintiff retained the RFC to work in other than a fast-paced, high-production work environment. [Doc. 11 at 8-14].

---

[7]     In its decision upon review of the ALJ's decision, the Appeals Council found that Plaintiff had a severe impairment of borderline intellectual functioning rather than intellectual disability, adopted the ALJ's other factual findings and rationale, and adopted the ALJ's conclusion that Plaintiff was not disabled. [R7-10]. This recitation of the Commissioner's findings of fact and conclusions of law therefore relies on the ALJ's recitation, amended to incorporate the AC's findings of severe impairments. [*Compare* R19-23 (ALJ decision) *with* R7-10 (AC decision)].

10

AO 72A
(Rev.8/8
2)

Plaintiff presented to Dr. Snook for a consultative psychological evaluation on November 2, 2012.[8] [R528-533]. Plaintiff told Dr. Snook that she had graduated from Metter High School with a special-education diploma in 2010. [R529]. She also reported that her mother was emotionally and physically abusive; her oldest brother molested her when she was nine or ten years old; she had been raped by an adult male cousin at age sixteen; and DFACS had removed Plaintiff from the household at age sixteen. [R529]. Dr. Snook noted that Plaintiff appeared depressed and anxious during the examination. [R532]. Dr. Snook also noted that testing indicated that Plaintiff's intellectual abilities were within the Extremely Low range, with a Full Scale IQ score of 60, but he found that Plaintiff's verbal skills and adaptive functioning were consistent with Borderline capabilities. [R532].

Following examination and testing, Dr. Snook diagnosed PTSD, major depressive disorder, recurrent, moderate, and borderline intellectual functioning; deferred diagnoses of cerebral palsy, acid reflux, seizures, and asthma to Plaintiff's physician; opined that unemployment, limited social interaction, and history of childhood sexual abuse may affect the diagnosis, treatment, and prognosis of Plaintiff's

---

[8]    Psychometrist Debbie Geisel, MA, also contributed to Dr. Snook's evaluation. [R528-33].

AO 72A
(Rev.8/8
2)

mental disorders; and assigned a GAF score of 55.[9] [R532]. Dr. Snook also opined that based on Plaintiff's performance during the evaluation, she appeared capable of understanding and remembering simple but not detailed instructions; that based on her slowed processing speed as observed during the evaluation, she "may have difficulty sustaining concentration, pace and persistence to permit the timely completion of assigned tasks"; that based on her tendency to isolate and difficulties with anxiety, Plaintiff "may have difficulty interacting with supervisors, coworkers, and the public"; and that "[g]iven the chronicity[10] of her mental health concerns[,] she would likely have trouble adapting to [the] stress of a work environment." [R533].

On January 10, 2013, state-agency physician Spurgeon Cole reviewed the record and issued an opinion of Plaintiff's mental residual functional capacity. [R96-98]. Based on the record, Dr. Cole opined that Plaintiff could understand and remember

---

[9] The Global Assessment of Functioning ("GAF") is a numeric scale (0 through 100) that considers psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision, 2000). A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* at 34.

[10] "Chronicity" refers to the state of being chronic. *Merriam-Webster's Collegiate Dictionary*, Chronic (10th ed. 1999).

AO 72A
(Rev.8/8
2)

simple directions but would have difficulty understanding and remembering detailed instructions; could carry out simple directions but would have difficulty carrying out detailed directions reliably; and would have episodic difficulty maintaining pace and attendance. [R98]. Dr. Cole also opined that Plaintiff should not have frequent or prolonged contact with the public, co-workers, or supervisors; that new procedures should be introduced slowly; and that Plaintiff could use assistance making realistic plans for the future. [R98]. Dr. Cole further stated that none of the limitations were substantially limiting. [R98].

The Commissioner assigned "great weight" to the opinions of Dr. Snook and Dr. Cole, finding that they were "consistent with the medical evidence and the testimony." [R7-8, 19-20]. The Commissioner further explained that in crafting the RFC, she had considered Plaintiff's testimony that she was able to use public transportation, socialize with others via her cell phone and text messaging, babysit for young cousins, perform household chores, play billiards and basketball, use a computer, read at a sixth-grade level, and follow the plot of detective shows on television; Plaintiff's "articulate and mentally sharp" demeanor at the hearing; high-school records noting that Plaintiff was "capable of solving simple addition and subtraction problems and some very basic multiplication problems without assistance"; and medical records

AO 72A
(Rev.8/8
2)

showing that Plaintiff had "very little mental health care," which the Commissioner took to indicate that Plaintiff's condition was not severely limiting. [R20-22]. Additionally, the Commissioner stated that the residual functional capacity accounted for the limitations described by Dr. Snook and Dr. Cole. [R22].

Plaintiff contends that the AC erred in its consideration of Dr. Snook's opinion. [Doc. 11 at 5-14]. She first cites legal authority providing that the Commissioner must consider the limiting effects of all of the claimant's impairments—severe and non-severe—together when determining the residual functional capacity. [*Id*. at 7]. She then argues that the when the Commissioner assigned great weight to Dr. Snook's opinion as a whole, yet limited the RFC merely to work in other than a fast-paced, high-production work environment, the Commissioner selectively disregarded Dr. Snook's opinion that Plaintiff would likely have trouble adapting to the stress of a work environment and thus abdicated her responsibility to consider the limiting effects of all of Plaintiff's impairments when determining the RFC. [*Id*. at 7-11]. Plaintiff further contends that Dr. Cole's opinion did not directly address whether Plaintiff could handle the stress of a work environment and therefore did not contradict Dr. Snook's stress opinion, [*id*. at 11-12]; argues that even if the opinions were in conflict, the Commissioner could not have credited Dr. Cole's opinion over Dr. Snook's opinion

14

without explaining why he credited a reviewing opinion over an examining opinion, [*id.* at 11-12]; asserts that the rest of the record indicates the severity of Plaintiff's mental-health impairments but does not discuss limitations in a work environment, [*id.* at 12-13]; and avers that trouble adapting to the stress of a work environment precludes all work, not merely work other than fast-paced, high-production work, [*id.* at 9].

The Commissioner, in response, argues that the AC's decision is supported by substantial evidence. [Doc. 12 at 6-14]. She contends that an individual's ability to adapt to the demands or "stress" of the workplace is an RFC determination delegated to the ALJ/AC, to be made after review of the medical assessments, the medical reports, the descriptions and observations of the claimant's limitations by the claimant and others, and all of the other relevant evidence of record. [*Id.* at 7-8 (citing *Castle v. Colvin*, 557 Fed. Appx. 849, 853-54 (11th Cir. Feb. 18, 2014); 20 C.F.R. §§ 416.927(d)(2), 416.945(a)(3), 416.946(c); Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *5-6)]. She contends that the ALJ therefore properly accounted for the stress opinion when he arrived at the RFC after expressly considering Dr. Snook's opinion; Dr. Cole's opinion, which took into account Dr. Snook's evaluation as well as the other evidence in the record, [R91-92]; Plaintiff's testimony that she was able to engage in a wide range of activities, including

performing household chores, babysitting, watching television, playing billiards and basketball, using a computer, and sending text messages, [R22, 43-49]; and Plaintiff's "articulate and mentally sharp" demeanor during the hearing, [R22]. [Doc. 12 at 8-11]. The Commissioner also argues that this Court and others have found that a claimant's difficulty in coping with stress was adequately accounted for by limiting the RFC to unskilled work, with limited contact with the public and co-workers and only occasional changes in the work setting, in other than a fast-paced, high-production work environment. [*Id.* at 11-12 (citing *Sullivan v. Colvin*, 519 Fed. Appx. 985, 989 (10th Cir. Mar. 13, 2013); *Holguin v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-00753-SAB, 2016 WL 2654326, at *7 (E.D. Cal. May 10, 2016); *Owens v. Colvin*, Civ. Action File No. 1:13-cv-01931-AJB, 2015 WL 5311078, at *10-13 (N.D. Ga. Sept. 11, 2015) (Baverman, M.J.); *Lafond v. Astrue*, No. 6:12-cv-6046(MAT), 2013 WL 775369, at *12 (W.D.N.Y. Feb. 28, 2013))]. Finally, the Commissioner contends that the opinions of Dr. Snook and Dr. Cole are not in conflict and that the ALJ did not err in assigning them both "great weight," as both opinions stated that Plaintiff was capable of understanding and remembering simple but not detailed instructions, [R98, 533], that Plaintiff had limitations in the ability to perform activities within a schedule, [R97, 533], and that Plaintiff had social

16

limitations, [R97-98, 533]: in essence, that Plaintiff was capable of mental functioning, albeit with limitations.  [Doc. 12 at 12-13].

Plaintiff's arguments supply the Court precious little with which to work.  She did not file a reply brief and therefore made no attempt to counter the Commissioner's arguments or distinguish the authority cited by the Commissioner.  (*See* Dkt.).

The few legal principles Plaintiff relies upon in her opening brief also provide scant support for her case.  It is uncontroversial that the Commissioner must consider each impairment that a claimant has and consider the impairments in combination in evaluating the claimant's disability.  *See, e.g., Vangile v. Comm'r, Soc. Sec. Admin*., 695 Fed. Appx. 510, 513-14 (11th Cir. July 13, 2017); *Jones v. Dep't of Health & Human Servs*., 941 F.2d 1529, 1533 (11th Cir. 1991); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  "This duty applies even when the impairments considered separately are not severe."  *Brown v. Comm'r of Soc. Sec*., 680 Fed. Appx. 822, 827 (11th Cir. Feb. 22, 2017) (citing *Hudson v. Heckler*, 755 F.2d 781, 785 n.2 (11th Cir. 1985)).  "[W]here a 'claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling.' " *Hudson*, *id.* (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).  Examination of the Commissioner's decision reveals, however, that

AO 72A
(Rev.8/8
2)

the ALJ did expressly acknowledge Dr. Snook's finding that Plaintiff "would have difficulty dealing with stress in the workplace." [R20].

Plaintiff's argument additionally disregards the Commissioner's rules for evaluating allegations and opinions of stress. The Commissioner defines stress as "[t]he reaction to the demands of work." SSR 85-15, 1985 WL 56857 at *6. The Commissioner also acknowledges that because "mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating the demands of work and work-like settings," and that "[d]etermining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult." *Id*. at *5. Administrative adjudicators are therefore directed to thoroughly evaluate the individual claimant's ability to adapt to the demands of such stress, considering such things as whether the characteristics of the claimant's particular mental illness may affect her ability to meet the demands of work. *Id*. at *6. "Any impairment-related limitations created by an individual's response to the demands of work . . . must be reflected in the RFC assessment." *Id*. In other words, the adjudicator is tasked with assessing vocational limitations caused by the claimant's particularized ability to tolerate stress. *See Lancellotta v. Sec'y of Health & Human Servs.*, 806 F.2d 284, 285 (1st Cir. 1986)

18

(explaining that it is the Commissioner's role to make "findings on the nature of the claimant's stress, the circumstances that trigger it, or how those factors affect his ability to work"); 20 C.F.R. § 416.946(c) (providing that when a case is pending at the Appeals Council, the final responsibility for assessing a claimant's RFC rests with the administrative appeals judge at the Appeals Council); *see also Lewen v. Comm'r of Soc. Sec.*, 605 Fed. Appx. 967, 968-69 (11th Cir. June 4, 2015) (finding that the ALJ sufficiently accommodated limitations in the claimant's ability to deal with stress or maintain a regular schedule where the ALJ limited her to simple tasks and unskilled work with little interaction with the public and supervisors; there was no indication that the RFC limitations did not fully accommodate the doctors' opinions that the plaintiff might have difficulty dealing with stress, concentrating, or maintaining a schedule; and there was no indication the doctors, by opining that the claimant might have difficulty dealing with stress, concentrating, or maintaining a schedule, meant that the limitations would limit the claimant's ability to work a full work day/week); *Owens*, 2015 WL 5311078 at *13 (finding that the ALJ had adequately accounted for the claimant's inability to cope with stress by incorporating a limitation into the RFC that the claimant could not perform fast-paced production work and limiting his contact with the public).

AO 72A
(Rev.8/8
2)

The "residual functional capacity is the most [a claimant] can still do" despite the physical and mental limitations resulting from her impairments. 20 C.F.R. § 416.945(a)(1); *accord Kent v. Acting Comm'r of the Soc. Sec. Admin.*, 651 Fed. Appx. 964, 966 n.2 (11ᵗʰ Cir. June 7, 2016); *Sanchez v. Comm'r of Soc. Sec.*, 507 Fed. Appx. 855, 858 (11ᵗʰ Cir. Feb. 8, 2013). The administrative adjudicator is required to consider all of the relevant evidence, including medical assessments, medical reports, and descriptions and observations of a claimant's limitations by the claimant and others. 20 C.F.R. § 416.945(a)(3).

Viewing the administrative decision against this legal framework, the Court is not persuaded that the Commissioner ignored or misinterpreted Dr. Snook's opinion of Plaintiff's ability to tolerate stress. After expressly recognizing that Dr. Snook found, among other things, that Plaintiff would have difficulty dealing with stress in the workplace, the Commissioner stated that she generally assigned "great"—though not controlling—weight to Dr. Snook's opinion. [R20]. The Commissioner then went on to consider Dr. Cole's mental RFC assessment, which took into account Dr. Snook's evaluation as well as the other evidence in the record, [R91-98]; Plaintiff's testimony that she was able to use public transportation, socialize with others via her cell phone and text messaging, babysit for young cousins, perform household chores, watch and

AO 72A
(Rev.8/8
2)

follow the plot of detective dramas on television, play billiards and basketball, use a computer, send text messages, and read at a sixth-grade level; school records indicating that Plaintiff is capable of solving simple addition and subtraction problems and some very basic multiplication problems without assistance; Plaintiff's "articulate and mentally sharp" demeanor during the hearing; and Plaintiff's receipt of very little mental care, which the Commissioner found to indicate that Plaintiff's condition was not severely limiting. [R20, 22]. Taking all of this evidence into account, the Commissioner then went on to fashion the RFC to accommodate adverse circumstances identified by Dr. Snook as likely to cause Plaintiff to have difficulty meeting the requirements of work: specifically, the ALJ accommodated Plaintiff's comprehension problems; the concentration, persistence, and pace issues caused by Plaintiff's slow processing speed; and Plaintiff's social limitations, [R533], by limiting Plaintiff to simple, routine, repetitive-type tasks, with only occasional changes in the work setting, only occasional interaction with the public and co-workers, and no fast-paced production work, [R21].

Plaintiff does not point to any other sources of stress the mental RFC failed to accommodate, nor does she raise any argument that the record was underdeveloped or that it was improper for the Commissioner to rely on any of the evidence cited in the

21

AO 72A
(Rev.8/8
2)

administrative decision in reaching the RFC. [*See generally* Doc. 11]. Plaintiff therefore supplies the Court with no basis for finding that the Commissioner failed to apply the proper legal standards, support her findings of fact with substantial evidence, or resolve crucial issues. *See Washington*, 558 F. Supp. 2d at 1296 (setting forth the limited scope of judicial review). Accordingly, the undersigned finds no basis for reversal in Plaintiff's arguments. *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (holding that a claim was waived where its proponent did not supply an argument or provide a citation to authority about the claim); *Jones v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 767, 770 (11th Cir. May 12, 2006) (holding that only the arguments asserted before the district court were preserved for appeal) (citing *Jones*, 190 F.3d at 1228).

## VI. CONCLUSION

For the reasons above, the Court **AFFIRMS** the final decision of the Commissioner. The Clerk is **DIRECTED** to enter final judgment in the Commissioner's favor.

**IT IS SO ORDERED and DIRECTED,** this the 15th day of March, 2018.

ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE